IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| v. | § § § § | CRIMINAL NO. H-19-cr-81 |
| LUIS LEON PINA | § | |

## MEMORANDUM AND OPINION

**I.   Background**

Luis Leon Pina is one of many defendants moving to dismiss an indictment charging him with violating 8 U.S.C. § 1326, following the Supreme Court's decision in *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), based on the Notices to Appear used to set their removal hearings.

In October 2013, a Notice to Appear was issued to Pina ordering him to attend a removal hearing before an Immigration Judge. (Docket Entry No. 19-2). The Notice did not specify the date and time for the hearing but ordered Pina to appear on "a date to be set." (*Id.*). An Immigration Judge held a hearing, which Pina attended, and ordered Pina deported on October 29, 2013. Pina was removed on October 30, 2013. (Docket Entry Nos. 19 at 2; 19-3; 20 at 17–18). On January 6, 2019, immigration authorities found Pina in Conroe, Texas and charged him with illegal reentry, in violation of 8 U.S.C. § 1326. (Docket Entry No. 19-3). This case is set for a jury trial on June 3, 2019.

Pina has moved to dismiss the indictment, arguing that the 2013 removal order was invalid because the Immigration Court lacked subject-matter jurisdiction. (*Id.* at 1). Pina also argues that

the 2013 removal order violated his due-process rights and 8 U.S.C. § 1326(d) and that the government cannot prove illegal reentry without an original valid removal. (*Id.* at 1).

## II. Pina's Challenge to Subject-Matter Jurisdiction

Under 8 U.S.C. § 1229a, Immigration Judges have the authority to "conduct proceedings for deciding the inadmissibility or deportability of an alien." 8 U.S.C. § 1229a(a)(1). These proceedings are "the sole and exclusive" means of "determining whether an alien may be . . . removed from the United States." 8 U.S.C. § 1229a(a)(3). Immigration Courts have limited jurisdiction. "Jurisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court." 8 C.F.R. § 1003.14(a). Charging documents for proceedings after April 1, 1997, are to "include a Notice to Appear, a Notice of Referral to Immigration Judge, and a Notice of Intention to Rescind and Request for Hearing by Alien." 8 C.F.R. § 1003.13.

Pina argues that because the 2013 Notice to Appear did not state a date or time for his removal hearing, but ordered him to appear on a date "to be set," it was not a valid charging document under federal law.[1] (Docket Entry No. 19 at 3). Without a valid charging document, Pina contends that the Immigration Court lacked subject-matter jurisdiction to issue the 2013 removal order, making the order invalid and preventing his removal proceedings from "commencing" under

---

[2] He also argues that the two reinstatement orders issued in 2016 and 2019 do not cure the immigration court's lack of subject-matter jurisdiction. (Docket Entry No. 19 at 12). Pina contends that reinstatement orders are not independent from the 2013 order of removal. (*Id.*). Because the original order was invalid, Pina argues, the reinstatement orders are as well. (*Id.* at 13 (citing *United States v. Pedroza-Rocha*, No. EP-18-CR-1286-DB, 2018 WL 6629649, at *3 (W.D. Tex. Sept. 21, 2018))).

8 C.F.R. § 1003.14(a). According to Pina, the government cannot prove a necessary element of the illegal-reentry charge against him and the indictment must be dismissed. (*Id.*).

Pina's arguments are largely based on *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), in which the Supreme Court held that a valid Notice to Appear under 8 U.S.C. § 1229(a) must include the time and place of a hearing for the "stop-time rule" to operate. *Id.* at 2118 ("[T]he statute makes clear that Congress fully intended to attach substantive significance to the requirement that noncitizens be given notice of at least the time and place of their removal proceedings. A document that fails to include such information is not a 'notice to appear under section 1229(a)' and thus does not trigger the stop-time rule."). The stop-time rule applies in a context different from the present case. It permits a nonpermanent resident to seek cancellation of removal after 10 years of physical presence in the United States. Once a valid Notice to Appear is served on a nonpermanent resident, that period ends, and further presence in this country does not extend the nonpermanent resident's time to seek cancellation of removal. § 1229b(d)(1)(A).

*Pereira* involved a nonpermanent resident who was served a § 1229(a) Notice that did not include the time and date of the hearing. When he later sought to cancel his removal under § 1229b, his request was denied because he had been served with the § 1229(a) notice. *Pereira*, 138 S. Ct. at 2112. The Supreme Court held that the denial was improper because the Notice did not include the "time and place at which the [removal] proceedings will be held." The Court explained that "neighboring statutory provision[s]" suggested that the Notice to Appear must include the time and location of the removal proceedings to trigger the stop-time rule. *Id.* The Court noted that § 1229 states that "in the case of any change or postponement in the time and place of [removal] proceedings," the government must give the noncitizen "written notice" of the new time or location

3

of the hearing." *Id.* at 2114. The Court understood this language to mean that "the Government has already served a 'notice to appear under section 1229(a)' that specified a time and place." *Id.* The Court also noted that "Section 1229(b)(1) gives a noncitizen 'the opportunity to secure counsel before the first [removal] hearing date' by mandating that such 'hearing date shall not be scheduled earlier than 10 days after the service of the notice to appear.'" *Id.* Without the date and location, a "putative notice to appear . . . is not a notice to appear under section 1229(a)(a)." *Id.* at 2113–14 (quoting 8 U.S.C. § 1229b(d)(1)(A)).

After *Pereira*, many defendants, including Pina, have moved to dismiss illegal-reentry indictments under 8 U.S.C. § 1326, arguing that they did not receive a Notice to Appear specifying the date and time for a removal hearing before the Immigration Court. Circuit courts that have addressed this issue consistently found no jurisdictional defect or due-process violation, even if the Notice to Appear leading to removal did not provide a specific date or time for the Immigration Court hearing. *See Banegas Gomez v. Barr*, No. 15-3269, 2019 WL 1768914, at * 6 (2d Cir. Apr. 23, 2019); *Soriano-Mendosa v. Barr*, No. 18-9535, 2019 WL 1531499, at *4 (10th Cir. Apr. 9, 2019) (per curiam); *Santos-Santos v. Barr*, 917 F.3d 486, 490–91 (6th Cir. 2019); *Karingithi v. Whitaker*, 913 F.3d 1158 (9th Cir. 2019); *Leonard v. Whitaker*, 746 F. App'x 269 (4th Cir. 2018) (per curiam).

These courts reasoned that *Pereira* was "not in any way concerned with the Immigration Court's jurisdiction," but instead only "considered what information a notice to appear must contain to trigger the stop-time rule." *Karingithi*, 913 F.3d at 1160–61. In *Karingithi*, the Ninth Circuit explained:

> *Pereira*'s analysis hinges on "the intersection" of two statutory provisions: § 1229b(d)(1)'s stop-time rule and § 1229(a)'s definition of a notice to appear. *Pereira*, 138 S. Ct. at 2110. The stop-time rule is not triggered by *any* "notice to appear"—it requires a "notice to appear *under section 1229(a)*." 8 U.S.C.

4

§ 1229b(d)(1) (emphasis added). *Pereira* treats this statutory cross-reference as crucial: "the word 'under' provides the glue that bonds the stop-time rule to the substantive time-and-place requirements mandated by § 1229(a)." *Pereira*, 138 S. Ct. at 2117. There is no "glue" to bind § 1229(a) and the jurisdictional regulations: the regulations do not reference § 1229(a), which itself makes no mention of the [Immigration Judge]'s jurisdiction. *Pereira*'s definition of a "notice to appear *under section 1229(a)*" does not govern the meaning of "notice to appeal" under an unrelated regulatory provision.

*Id.* at 1161 (emphasis in original). As the Supreme Court emphasized many times in *Pereira*, that opinion only decided a single, "narrow question." *Pereira*, 138 S. Ct. at 2110, 2113.

These circuit court decisions also relied on the Board of Immigration Appeals's recent precedential opinion that rejected the argument Pina and others have made. In *Matter of German Bermudez-Cota*, 27 I. & N. Dec. 441 (B.I.A. Aug. 31, 2018), the Board held that *Pereira* does not apply to determine an Immigration Court's jurisdiction when "the respondent is not seeking cancellation of removal, and the stop-time rule is not at issue." *Id.* at 443. The Board explained that "a notice to appear that does not specify the time and place of an alien's initial removal hearing vests an Immigration Judge with jurisdiction over the removal proceedings . . . so long as a notice of hearing specifying this information is later sent to the alien." *Id.* at 447. The Second, Ninth, and Sixth Circuits have emphasized that because an agency's interpretation of its own regulations is "controlling unless plainly erroneous or inconsistent with the regulation," the Board's decision in *Bermudez-Cota* guides the interpretation of 8 C.F.R. § 1003.14. *See Auer v. Robbins*, 519 U.S. 452, 462 (1997); *Banegas Gomez*, 2019 WL 1768914, at *7; *Karingithi*, 913 F.3d at 1161; *Hernandez-Perez*, 911 F.3d at 312. Although the Fifth Circuit has not ruled on this issue, it has emphasized that *Pereira*'s "narrow question was whether a [Notice To Appear] that does not specify the time or place of the removal hearing triggers the 'stop-time rule' for purposes of a cancellation

5

of removal." *Mauricio-Benitez v. Sessions*, 908 F.3d 144, 148 n.1 (5th Cir. 2018); *see also Ramos-Portillo v. Barr*, 919 F.3d 955, 960 n.3 (5th Cir. 2019) (same).

District court decisions on this issue are inconsistent, but the more recent decisions have more often rejected *Pereira*-based challenges like Pina's. *See, e.g.*, *United States v. Porras-Avila*, No. 4:19-cr-010-1, 2019 WL 1651191, at *10 (S.D. Tex. Apr. 16, 2019) (Hanen, J.) (denying the motion to dismiss the indictment based on the Notice to Appear's failure to include the hearing date and time); *United States v. Salas-Zuniga*, No. H-19-055, 2019 WL 1275563 (Atlas, J.) (S.D. Tex. Mar. 20, 2019); *United States v. Ramirez-Cruz*, No. 2:18-CR-206-FtM-38MRM, 2019 WL 952313, at *2 (M.D. Fla. Feb. 27, 2019) (same); *United States v. Gonzalez-Ferretiz*, No. 3:18-CR-117, 2019 WL 943388, at *6 (E.D. Va. Feb. 26, 2019) (same); *United States v. Calderon-Avalos*, No. EP-18-CR-3156-PRM, 2019 WL 919210, at *18 (W.D. Tex. Feb. 25, 2019) (same). Courts that have found a jurisdictional defect generally require a showing that the defendant did not have actual notice of the removal hearing and did not attend or have an opportunity to attend the hearing before an Immigration Court. *See United States v. Cortez*, No. H-cr-19-007, 2019 WL 1112686, at *1 & n.1 (S.D. Tex. Mar. 11, 2019) (collecting case law and identifying the differences). In this case, the government has alleged, and Pina did not dispute, that he signed the Notice to Appear, requested to promptly have a hearing before the Immigration Court, and appeared at and participated in the removal hearing. (Docket Entry No. 20 at 17–18).

The court rejects Pina's argument based on lack of subject-matter jurisdiction.

### III. Pina's Related Due-Process Challenges

Pina argues that the court should dismiss the indictment "[b]ecause the immigration court lacked jurisdiction to enter a removal order," making "the prior removal proceedings . . .

fundamentally unfair," in violation of Pina's due-process rights. (Docket Entry No. 19 at 10). Pina contends that because the charging document filed in his removal proceedings was not a valid Notice to Appear under § 1229(a)(1)(G) and *Pereira*, the Immigration Court's "jurisdiction did not vest and removal proceedings did not commence under 8 C.F.R. § 1003.14(a)." (*Id.* at 10). Pina states that "[e]xhaustion of administrative remedies is not required where the remedies are inadequate, inefficacious, or futile . . . or where the administrative proceedings themselves are void." (*Id.* (quoting *United Farm Workers of Am., AFL-CIO v. Ariz. Agr. Empl. Relations Bd.*, 669 F.2d 1249, 1253 (9th Cir. 1982)). He points to district courts holding that "the defendant 'need not show that he exhausted administrative remedies because the immigration court proceedings were void,'" (*id.* at 11–12 (quoting *Virgen-Ponce*, 320 F. Supp. 3d 1164, 1166 (W.D. Tex. July 26, 2018)))), and arguing that he suffered actual prejudice because he "was ordered removed when the court had no authority to issue such an order." (*Id.* at 12).

The government argues that Pina's due-process argument is an improper collateral attack on his removal order under 8 U.S.C. § 1326(d), which states:

> In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in section (a)(1) or subsection (b) unless the alien demonstrates that:
>
> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2) the deportation proceeding at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
>
> (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d).

The government argues that Pina's failure to exhaust his administrative remedies is not excused or otherwise inapplicable, characterizing the case Pina cites as "an outlier among the district

7

court decisions addressing similar motions to dismiss, [that] was erroneously decided." (Docket Entry No. 20 at 14). The government points to *De La Paz-Zaragoza v. Sessions*, No. 18-3221, 2018 U.S. App. LEXIS 28780 (6th Cir. Oct. 11, 2018), in which the Sixth Circuit rejected the defendant's interpretation of *Pereira* as requiring a proper notice to appear for an Immigration Court to have jurisdiction and instead emphasized that noncitizens needed to exhaust administrative remedies. The government argues that exempting Pina from the exhaustion requirement "because the immigration court proceeding was void [would] collapse[] the first and third prongs of § 1326(d)." (*Id.* at 16).

The government also argues that Pina has not shown that the 2013 removal proceedings were unfair or otherwise violated due process. (*Id.* at 15–16). Pina received and signed the Notice to Appear, attended and participated in the October 2013 hearing, and "had the opportunity to appeal the removal order that resulted from that hearing." (*Id.* at 16). The government is correct that even if the Notice to Appear had included the hearing's date and time, "it is a near certainty that the proceedings would have taken place in the same manner, at the same time, and with the same result." (*Id.* at 18). Pina cannot show that a Notice to Appear with the date and time would have changed the outcome of the 2013 removal hearing. (*Id.*).

The court agrees with the government. Pina's due-process claims are based on his argument that the Immigration Court lacked subject-matter jurisdiction to issue the removal order. For the reasons stated earlier, the absence of the date or time in the Notice of Appear did not deprive the Immigration Court's jurisdiction. Pina's related due-process claims fail.

**VI.     Conclusion**

Pina's motion to dismiss the indictment, (Docket Entry No. 19), is denied.

SIGNED on May 13, 2019, at Houston, Texas.

                                                      Lee H. Rosenthal
                                       Chief United States District Judge